Okay, and Mr. Webster. Good morning, your honors and counsel. May it please the court. My name is Matthew Webster from the law firm of Frederickson & Byron, and I'm here today as pro bono legal counsel for my client, Petitioner Ahmed Mohamed. Mr. Mohamed left his country at the age of 17 and was in the U.S. for the majority of his life. In 2011, due to a series of unfortunate events, an order of removal was issued in absentia. In December 2017, Mr. Mohamed was part of the botched Somali 92 deportation attempt. In 2018, Petitioner filed a motion to reopen based on changed country conditions. After the immigration judge's initial finding denying the motion to reopen was remanded by the BIA specifically due to, quote, inadequate fact finding, end quote, the immigration judge once again denied the motion to reopen and the BIA confirmed. Both of these lower court decisions are in clear error by requiring new or novel country conditions rather than the section 1229A-C-7-2 statutory requirement of simply changed country conditions. Counsel, do you agree that the type of violence is the same as what was occurring on about all relevant times, the type of violence? Would you agree to that? It depends, Your Honor, on which group you're referring to. ISIS Somalia at the time of the 2011 hearing was virtually nonexistent. It wasn't wasn't elevated to an ISIS affiliate status until December of 2017, and it wasn't recognized by the United States as a specially designated terrorist group until February 27th of 2018, just months before the motion to reopen was filed. In terms of al-Shabaab, the organization has a history, a long history of targeting specific groups, but really at issue here is its ability and its capability to carry out this target. Back to my question. I think you answered it, but I want to be sure. The type of violence is kind of the same. The only question here is the intensity of the violence. Do you agree with that distinction? Yes, Your Honor, to the extent that both groups are involved in terroristic attacks targeted at specific groups. Well, and particularly on the second group you talked about, I have trouble keeping them straight, but particularly on the second group you talked about, the type of violence is really the same. Yes, Your Honor. It's really its ability and the scale. Okay, so now we're talking about is how much intensity does it take? How much difference in intensity? Convince me that there's a great big difference in intensity or not. Sure, Your Honor. And I think a key issue here is really the relevant time periods. Al-Shabaab was kind of at the height of its power in 2009. It was called its golden days in the country, and it was really rapidly advancing throughout the country and even penetrated into the capital city of Mogadishu. At the time of Mr. Mohammed's initial 2011 hearing, however, it had really been driven back. And so it might have still had the desire to carry out these targeted attacks, but it wasn't able to at that point. It had largely been driven back, and its ability to carry out these targeted attacks was significantly reduced. It wasn't really again until later, 2016, 2017, we specifically referenced the attack called Somalia's 9-11 in 2017, where over 580 people were either killed or missing due to a bombing attack in Mogadishu. It wasn't really until that point that they had kind of returned to their level of ability and capability to carry out these targeted acts of violence. Okay, apply what you just said to our Habashi case. Is it good or bad for you? It's good, Your Honor. Are you sure? Go ahead. It's got a lot of factors, so something has to be bad for you there. Go ahead. Thank you, Your Honor. I appreciate you drawing attention to the Habashi v. Philippe case because I think that's really the relevant case here. That case requires adequate consideration of all factors raised. In that case, it was specifically regarding a Lebanese Christian and whether that individual would be specifically targeted by Hezbollah. Again, Hezbollah was present in the country at both periods of time, but it had significantly more capability within the country of Lebanon at the time of the motion to reopen. In fact, that was the fourth motion to reopen in that case, and the Eighth Circuit found in that case that it didn't make an ultimate determination. It said the lower court still could find that there was inadequate, but its short shrift of the facts and its failure to specifically address one of the changed country conditions raised by the petitioner was inadequate. It's supposed to be kind of a straight line up. I know there can be some little dips. You've seen the stock market, but a straight line up like this, does it imply that? The Habashi v. Philippe case? Yeah. It's really from the relevant time period. So Hezbollah's kind of rise, I think, kind of took place between the third and the fourth motions to reopen in that case. So at the time of the fourth motion to reopen, Hezbollah was on an upwards trajectory, and so it was kind of gaining in its ability to carry out these targeted attacks. That's similar here. Again, we set forth in our brief kind of a chart showing the before and after status of al-Shabaab in particular, and you can see that that terrorist group's trajectory has really been parabolic rather than linear. Again, it was at a state of power and of reach in 2008, 2009. By the time of 2011, though, it was pushed out of much of the country, and so it wasn't able to carry out these attacks. That had significantly changed by 2018 at the time of the present motion. Okay, now what about the human – normally the human rights watch materials are cited by you. But in this case, this 2010 Human Rights Watch report that the government relies on, I don't know, it makes it look like it's more like this or down or something rather than some kind of upward trend like you're describing. So how do you respond to their 2010 Human Rights Watch – is it a report? I think it's a report. Go ahead. Sure, Your Honor. Well, I think the 2010 report is consistent with this idea that it was al-Shabaab in 2008 and 2009 was at a high place, and then it went down between 2011 and 2014, wasn't really involved in many acts of persecution, and then again it was able to rise. In 2011, the country of Somalia held its first presidential election since 1967, and that was largely because they had been able to gain control over the territory formerly controlled by al-Shabaab, and they were able to exert that governmental influence. That had deteriorated by the time of 2018, again because of the encroachment of al-Shabaab in a lot of these areas and its increased ability and capability to carry out those attacks. Your Honor, I think it's a starker question really regarding whether the lower courts adequately considered the appropriate factors vis-a-vis ISIS Somalia. Both of the lower courts dismissed the 16 pages of record evidence in mere footnotes – a one-sentence footnote for the BIA and a three-sentence footnote for the immigration judge. I don't know how that can satisfy the adequate consideration of all factors standard set forth by the Habshi v. Philippe case. Indeed, neither of those decisions stated that there were no changed country conditions, but rather that there was insufficient evidence, and that's flatly contradicted by the fact that there were 16 pages of evidence. We set forth the before and after evidence in our opening brief, pages 31 to 32, and that really shows, again, that it's virtually nonexistent in 2011. I admit that we didn't put very much evidence in prior to 2011, and that's simply because there wasn't much. It's basically asking us to prove a negative. It wasn't really effective in the country until after that date. Again, it was recognized by the ISIS overarching group as an official affiliate on Christmas Day 2017. It then really engaged in targeted attacks and assassinations, and it was listed by our government on February 27th of 2018 as a specially designated terrorist group. What about our recent case, Ali v. Barr? That's bad for you. Your Honor, as you can appreciate, these cases are highly fact-specific, and so there are some key distinctions there. That case also relies on the Zia v. Lynch case, and so I'll kind of address both of them. The Zia v. Lynch case is highly fact-specific as well and is distinguishable there. In that case, the petitioner failed to submit the necessary prior conditions evidence, and it was also based in part on a change in personal conditions or personal circumstances. That's not the case here. Ali v. Barr, again, relies highly on that. In Ali v. Barr, the petitioner had significant credibility issues, which were mentioned in the decision. We're also dealing with a different time frame. Again, 2007 is not 2011 when we're talking about al-Shabaab. It had power in 2007, 2008, 2009. Again, much of its power had been stripped at the time of our client's hearing in 2011, which it then was able to regain and really build upon leading up to that really grisly attack in 2017. Is that the same distinction you would make for—is it Shire v. Barr? Shire. Are you making the distinction that that was 2008, not the 2011-ish time? Or are there other distinctions there? Because that one also seems relatively close to what you're presenting here. You're right, Ryder. The distinguished, honorable Judge Shepard upheld the denial in that case. I think a key distinction there is, again, that's 2008. This is 2011. 2008 is simply not 2011 when we're talking about al-Shabaab. And, again, I would bring the court back to the ISIS-Somalia issue. Again, here I don't think a summary dismissal, a really dismissive dismissal in a footnote of this terrorist group, which is part of ISIS, is sufficient, is adequate consideration of all factors raised. That's a significant piece that, again, wasn't addressed in this case sufficiently. Your Honors, I would like to reserve the rest of my time for— You may. You may. Thank you very much. Ms. McKay. Good morning, Your Honors, and may it please the court. Leslie McKay for the attorney general. I'd like to start with the evidence of ISIS. Unlike Mr. Muhammad's argument, the agency certainly didn't engage in an extensive discussion of ISIS, but there's no evidence or there's no reflection when you read the agency's decision that they didn't understand or didn't consider Mr. Muhammad's arguments with respect to ISIS. If you look at pages 3 and 98 of the record, those are the board and the immigration judge's decision. In the first full paragraph on those pages, each of them lay out all of his arguments as to change country conditions and specifically mention ISIS in those paragraphs. The immigration judge also cited one piece of Mr. Muhammad's evidence, the USA Today article that discusses ISIS' first, I guess, video, like a propaganda-type video, and recognized ISIS as a small but growing presence in Somalia. And that article is at page 535 of the record. The board then cited Mr. Muhammad's brief, his administrative brief, at page 41 of the record, which contains a table with a side-by-side comparison of what I assume he thought was his best evidence as to ISIS, kind of a before and after. And from all of that, the agency reasonably determined that he simply hadn't demonstrated a meaningful change in Somali country conditions with respect to ISIS. The fact that it didn't exist prior to his in absentia removal order, and it does exist at the time of his motion to reopen, isn't necessarily enough to show that meaningful change in conditions rather than simply a continuation of the chaotic and violent conditions that have plagued Somalia really for decades at this point. With respect to al-Shabaab, as the court held in Shire, al-Shabaab has been present in Somalia since 2008 and has used the same tactics through 2018. So we're not talking about a different type of violence, as Your Honor recognized. We're talking about whether there has been an increase in the intensity of violence. And I think that what we have here is a situation where Mr. Muhammad would prefer a different interpretation of the record evidence. But he hasn't shown an abuse of discretion in the agency's findings that the basic nature of the insurgency and its effect on the civilian population is essentially the same now as it was then. I have a question about a phrase that the immigration court used in saying essentially, I think, at least in part what you're saying, that respondent is unable to meet his burden of proof to establish changed country conditions and not merely heightened conditions in relation to al-Shabaab. What is that distinction that the IJ is making there, do you think? Because I guess I'll follow up with my follow up question. It seems to me that heightened conditions could in fact be changed conditions. So what what is that distinction that's being made there in your view? I think that and the board also uses the word escalated in relation to al-Shabaab. And I think that what what they were both really driving at is that it's certainly clear from the evidence that over time al-Shabaab has reorganized itself. It's very nimble and it has certainly transitioned from more one off suicide bomb type attacks to an ability to carry out more complex and the hotel bombing or a larger car bombing. So I think that that's really what the agency was getting at was a recognition that, yes, al-Shabaab has changed a bit in terms of what it's capable of in 2017 or 2018 versus what it was capable of at the time of his hearing as an absentia order in 2011. But I think that when they looked at the evidence as a whole, what what their conclusion was, was that conditions for Somali citizens who are kind of caught in this still in this crossfire between Islamic insurgents on the one hand and government forces on the other, that those conditions hadn't materially changed, that there was no material increase in danger to those citizens. Does that answer your question? The IJ didn't say that, nor did the board. And I'm just I'm I just see heightened conditions. And it seems to me that that could maybe wouldn't have to, but it could indicate a change such that perhaps they're of the same type or the same nature, but they're so heightened that it would qualify as changed. And I you give an interesting answer, but I don't I didn't necessarily read that from from the board or the IJ. I see. I, you know, I think I think this is a difficult case, the way that the the way that the evidence came in. There's a lot of it. And it's difficult to make an apples to apples comparison of the before and after because we don't have, for example, a State Department report from 2010 versus the State Department report from 2017. So I do think that the agency considered all of that evidence and its conclusion that there was no change is reasonable based on that evidence. I agree with you that some of the phrasing or some of the articulation could have been a little bit more clear. But I think overall, what what the record shows is that the agency was engaged with this evidence and simply didn't find it sufficient to satisfy Mr. Mohammed's burden of proof. Counsel, this is a rare case where I think the two of you really phrase this case the same way that the type of violence is the same. It's a question of intensity. I think you I think you both agree on that. Now, tell me how our precedent and let's start with the toughest one, Habachi, however you say it. Tell tell me, please, how that how we should apply that to this case. So, Your Honor, I think that that Habachi I think Habachi really does talk about more of a true sort of straight line progression and violence from the Hezbollah. And it is true in this case that that there's ebbs and flows in in the nature of the conditions in Somalia. So I'm not sure that it's I'm not sure that Habachi is maybe the best case here because every one of these cases is so fact specific. But I do think that overall, again, what you have in Habachi is you you know, you're looking at the evidence and you're applying it to the standard. And I think that here that's exactly what the agency did. And looking at these facts, was it reasonable? Yes, I think that it was. There was nothing arbitrary or irrational about what the agency did here. It fully considered the arguments and evidence and came to a conclusion. I do think that Shire is probably our best case. It's certainly the closest on the facts. And that case, you know, discusses both al-Shabaab's long presence and its use of the same tactics over a period of about a decade. And it also discusses the agency's failure to specifically mention ISIS and finds no legal error there. And here we have actually much more than I think what was true in in Shire, because the agency specifically does mention ISIS and specifically cites not only a particular document or particular piece of evidence, but also that side-by-side comparison that petitioner offered to the board. So I do think that this, I do think that Habachi, I don't think that that's an impediment here. Ali and Zia also provide additional support, although it is true that the circumstances there, again, were slightly different. Particularly in Ali, the agency, and I think the court, was really focused on whether he presented new evidence. It wasn't so much a change. It was whether the evidence about al-Shabaab was new. And that's really what the decision rose and fell on. Counsel, is the Shire case in your brief or the blue brief, either of the briefs? Excuse me. The Shire case was in a 28-J that I filed. Oh, okay. Sorry. Sorry, I missed that. A couple of months ago. Proceed. I think that I'm really at the end here for, as far as argument. Does the court have any additional questions for me at this point? Judge Shepard, any more questions? No, I do not. Judge Kelly? No, sir. Ms. McKay, thank you for your argument.  Thank you very much. Sure. Thank you, Your Honors. I would just like to continue with the question posed by Judge Kelly, and I really think is kind of key here in terms of the legal question before the court. And that's, frankly, whether changed country conditions requires new country conditions, a new persecutor or a new group, or instead an intensification of a preexisting threat or new instances of persecution. That was the holding in the Habshi v. The second, fourth, sixth, ninth, and 10th. And we lay out those string sites in our opening brief on pages 21 to 22. Here, as Judge Kelly specifically noted in their decision, the immigration judge stated that petitioner had shown an increased ability to carry out more complex and targeted attacks than in previous years. That should be enough under the Habshi v. Philippe standard and under the standards of those five additional courts. Stating that, you know, because al-Shabaab existed in 2011 and it still existed in 2018, that it's the same country conditions, is like stating that al-Qaeda was the same organization and the same threat before 9-11 and after 9-11. Party in 1920, when it was founded, was the same as it was in 1945. It's the same organization, the same philosophy, but clearly had changed in its ability and its capability to carry out targeted attacks against individuals like our client. Okay. And I would just open it up if there are any other questions. Sure, and I'll do the same check. Judge Shepard, further questions of Mr. Webster? No. Judge Kelly? No. Okay. Thank you, Your Honor. Thank you. That concludes argument. Thank you. And 19-3356 is submitted for decision by the court. Ms. Smith, please.